# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

DWAYNE TUCKER,

    Petitioner,

v.

L.A. JONES, Acting Warden,

    Respondent.

CIVIL ACTION NO.: 2:17-cv-133

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Dwayne Tucker ("Tucker"), who is incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Motion to Dismiss, (doc. 9), and Tucker filed a Response, (doc. 13). For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DISMISS** Tucker's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Tucker *in forma pauperis* status on appeal.

## **BACKGROUND**

Tucker was convicted in the United States District Court for the District of New Jersey for producing child pornography in violation of 18 U.S.C. § 2251(A) (Count 1), and possessing child pornography 18 U.S.C. § 2252A(A)(5)(B) (Count 2). (Doc. 9-1, pp. 1–2, 5–6.) He was sentenced to 264 months' imprisonment on January 4, 2013. (Id.) Tucker has a projected release date of March 8, 2030, via good conduct time credit. (Id. at p. 6.)

In his Petition, Tucker asserts that his due process rights were violated as a result of disciplinary proceedings arising out of a charged incident of stealing. (Doc. 1.) Due to this

incident, the Bureau of Prisons' ("BOP") Disciplinary Hearing Officer ("DHO") disallowed Tucker from receiving twenty-seven days of good conduct time and revoked his telephone privileges for three months.

Tucker's disciplinary proceeding arose out of an incident on November 14, 2016. On that date, Officer Lucas, a BOP Senior Officer Specialist at FCI Jesup, issued Tucker an incident report, charging him with stealing. (Doc. 1, p. 10.) Specifically, the officer alleged that Tucker was pushing a laundry cart with a recreation bag on top. When the Officer Lucas stopped Tucker and searched the bag, he found two plastic bags full of chicken, one plastic bag full of cookies, and several boiled eggs. (Id.) The incident report states that Tucker admitted the items were "from the Officer's Mess." (Id.) The Unit Disciplinary Committee Chairman referred the incident to the DHO for a hearing. (Id.) On November 17, 2016, BOP Case Manager P. Nash advised Tucker of the charges against him in the incident report and advised him of his rights, including the right to representation at the hearing and the right to call witnesses and present evidence. (Id. at p. 11.) That same day, Tucker also received and signed a Notice of Discipline Hearing. (Doc. 9-2.) Tucker indicated that he wanted to have a staff representative at the hearing but he did not intend to call witnesses. (Id.)

On November 22, 2016, the DHO held a hearing regarding the charges against Tucker. (Doc. 1, pp. 12–13.) Per Tucker's request, Counselor S. Beal served as Tucker's staff representative at the hearing. (Id.) The DHO considered Officer Lucas's statement as well as a memorandum from Lieutenant McKnight, the officer who reviewed the confiscated items and interviewed Tucker following the incident. (Id.) Lieutenant McKnight's memorandum included a statement from Tucker claiming that he retrieved the items from the trashcan in the staff dining area and, therefore, did not realize he was stealing. (Id.) The DHO also reviewed photographs

2

taken by Compound Officer Millwood of clear plastic bags containing the food items that Tucker allegedly stole. At the hearing, Tucker was given the opportunity to make a statement. (Id.) He claimed that a confiscation form was not submitted for the property, and therefore, there was no evidence that he possessed the contraband. (Id.) He also argued that the contraband was not maintained until the disciplinary hearing and that he never admitted to taking the items. (Id.)

DHO Aspinwall issued a written DHO Report following the hearing. (Id. at pp. 11–13.) The DHO found, based upon the greater weight of the evidence, that Turner committed the charged offense of stealing. (Id. at p. 12.) The DHO relied upon the statements of Lucas and McKnight as well as Millwood's photographs. (Id.) DHO Aspinwall explained that a confiscation form is only produced when officers "attempt to establish ownership of property seized from an inmate." (Id.) Because the items taken from Turner "were not available through legitimate channels," no confiscation form need be prepared. (Id.) Additionally, because the stolen items were food, health and sanitation concerns prevented the officers from preserving the items for the disciplinary hearing and allowed them to rely upon photographs. (Id.) The DHO sanctioned Tucker by disallowing twenty-seven days of good conduct time and revoking telephone privileges for three months. (Id. at pp. 12-13.) The DHO Report was delivered to Petitioner on November 25, 2016, and it informed Tucker of the DHO's findings, the evidence underlying those findings, and his right to appeal the DHO's decision within twenty days. (Id. at p. 13.)

In his Section 2241 Petition, Tucker avers that staff members misconstrued his statements, manufactured evidence, and lied about the events surrounding his incident report. (Id. at p. 7.) Tucker also contends that he never "took ownership of the gray tote bag" involved in the disciplinary charges against him. (Id.) He focuses on the allegation that FCI Jesup staff

did not provide him a "confiscation form" as he contends they are required to do. (Id.) Additionally, Tucker argues that the items he allegedly stole were only photographed in plastic bags that remained sealed and "[i]t cannot be determined what is contained within the plastic bags in the photographs." (Id. at p. 8.) Finally, he claims that the allegations against him included an assertion that he stole pork chops, and "FCI Jesup did not have 'pork chops' to steal at the time." (Id.)

Respondent avers Tucker failed to exhaust his administrative remedies prior to filing his Petition, and his Petition should be dismissed as a result. (Doc. 11.) Moreover, Respondent maintains that even if Tucker had exhausted his administrative remedies, he was afforded due process prior to receiving the sanctions. The Court addresses Respondent's contentions in turn.

## DISCUSSION

### I. Whether Tucker Exhausted his Administrative Remedies

#### A. Legal Requirements for Exhaustion

The Eleventh Circuit Court of Appeals has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549

U.S. 199, 216 (2007). Additionally, the United States Supreme Court has "held that the PLRA's [Prison Litigation Reform Act's] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, 578 U.S. ___, 136 S. Ct. 1850, 1856 (2016).

Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross, it reiterated that a prisoner need only exhaust those remedies available to him. 578 U.S. at ___, 136 S. Ct. at 1858 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id. at ___, 136 S.Ct. at 1859 (citing Goebert v. Lee County, 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id.

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be

based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[1]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152,

---

[1] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in

7

conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. The BOP's Exhaustion Requirements

The BOP has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of his imprisonment. 28 C.F.R. § 542.10, *et seq*. The Administrative Remedy Program applies to all inmates incarcerated in penal institutions operated by the BOP. 28 C.F.R. § 542.10(b). Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff. 28 C.F.R. § 542.13(a). If this does not resolve the matter, an inmate must submit a formal written administrative remedy request within twenty calendar days of the incident giving rise to the grievance. 28 C.F.R. § 542.14(a). Administrative Remedy Form BP-229(13) is the form to be utilized at the institution level. This form is commonly referred to as a "BP-9" form.

If unsatisfied with the Warden's response to the BP-9 administrative remedy request, an inmate may take an initial appeal to the appropriate Regional Director within twenty days of when the Warden signed the response. 28 C.F.R. § 542.15(a). In those situations in which an inmate is appealing a disciplinary hearing proceeding, however, the inmate is to submit an appeal directly with the Regional Director for the region in which the inmate is located at the time of filing. (Id.) Administrative Remedy Form BP-230(13) is the form to be utilized at the regional level. This form is commonly referred to as a "BP-10" form. (Doc. 9-1, p. 2.)

If unsatisfied with the Regional Director's response, an inmate may take a final appeal to the BOP's Office of General Counsel in Washington, D.C., within thirty days of when the Regional Director signed the response. (Id.; 28 C.F.R. § 542.15.) Appeal to the BOP's Office of

General Counsel is the final step in the BOP's administrative remedy process. (Doc. 9-1, p. 2.) Administrative Remedy Form BP-231(13) is the form to be utilized at the final level. This form is commonly referred to as a "BP-11" form. (Id.)

At any level, the coordinator may reject and return an appeal that does not meet any of the requirements. 28 C.F.R. § 542.17. The inmate must be provided with written notice of the reason for rejection. If the defect is correctable, the inmate must be given a reasonable extension of time to correct the deficiency. (Id.) "When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection, . . . , to the next appeal level. (Id.)

### D. Tucker's Efforts at Exhaustion[2]

In his Petition, Tucker states that he filed an appeal to the BOP's Regional Office on December 12, 2016, and that it was rejected on December 29, 2016. (Doc. 1, p. 2.) He states that he then filed an appeal to the "Central Office" on January 20, 2017, and that he received no response to that appeal. (Id. at p. 3.) Tucker attached a copy of his BP-10 Form, his appeal to the regional office, to his Petition. (Id. at pp. 15–16.) Though Tucker dated this Form December 12, 2016, the form is marked as having been received by the BOP's Regional Office on December 27, 2016. (Id.) Tucker did not attach a copy of his alleged appeal to the Central Office.

---

[2] As noted above, the Supreme Court in Ross held that an inmate need not exhaust administrative remedies where those remedies are "unavailable." ___ U.S. at ___, 136 S.Ct. at 1858. However, Tucker has not argued that the BOP's administrative remedies were unavailable to him. Moreover, even if Tucker had made such an argument, he has not demonstrated any of the limited circumstances outlined by the Supreme Court where administrative remedies should be considered unavailable. The Court finds, particularly given the materials attached to Defendant's Motion to Dismiss, including evidence that Tucker was able to file a BP-10 appeal and that the BOP Regional Office responded to that appeal, that the BOP's remedies were available to Tucker at FCI Jesup.

9

In the Motion to Dismiss, Respondent contends that while Tucker appealed the DHO's decision to the Regional Director by filing a BP-10 Form on December 27, 2016, that appeal was rejected as untimely. (Doc. 9, p. 2.) Respondent contends that Tucker did not appeal that rejection or pursue any further administrative remedies regarding the DHO decision. (Id.) In support of these contentions, Respondent attaches the affidavit of Lissette Santana, a legal assistant in the BOP's Southeast Regional Office. (Doc. 9-1.) Ms. Santana avers that she reviewed the BOP's records regarding Tucker's pursuit of administrative remedies, and those records reveal that the only filed grievance is the untimely BP-10 Form. (Id. at pp. 2–3.) She attaches the BOP's records to her affidavit. (Id. at p. 7.)

In his Response to the Motion to Dismiss, Tucker states that he filed the BP-10 Form by placing it in the "institutional mail" within twenty days of the DHO's decision. (Doc. 13, p. 1.) He contends that the BOP's rejection of that appeal as untimely "relieved" him from further pursuing his administrative remedies. (Id.) However, he also maintains that he filed a BP-11 Form with the BOP's Central Office within thirty days, but that he did not have sufficient funds to obtain a copy of his BP-11 Form before filing it. (Id.)

Even accepting Tucker's version of events, he did not properly exhaust the BOP's administrative remedies before filing his habeas petition. The DHO Report sanctioning Tucker was delivered to him on November 25, 2016. The Report notified Tucker of his right to appeal and that he had twenty days to appeal. Thus, Tucker was required to file his appeal on or before December 15, 2016. An appeal to the Regional Office is considered filed on the date it is logged into the Administrative Remedy Index as having been received. 28 C.F.R. § 542.18. There is no dispute that Tucker's BP-10 Form was not received and logged in to the Administrative Remedy Index until December 27, 2016. (See Doc. 1, pp. 14–15; Doc. 9-1, p. 7.)

Tucker argues that his BP-10 Form should be considered timely filed because he mailed it within the twenty-day time period for appealing the DHO's decision. (Doc. 13, p. 1.) In essence, Tucker urges this Court to apply the "prison mailbox rule" to his BP-10 filing.[3] However, this court and others have consistently found that the prison mailbox rule does not apply to the filing deadlines in the BOP's grievance procedure. Williams v. Burgos, No. CIV.A. CV206-104, 2007 WL 2331794, at *3 (S.D. Ga. Aug. 13, 2007) (holding that prison mailbox rule does not apply to BOP administrative remedy appeal because "the Bureau of Prisons' regulations deem an appeal to be filed when the appeal has been logged in the Index as received."); see also Nigro v. Sullivan, 40 F.3d 990, 993 (9th Cir. 1994); Goddard v. Alexakos, No. CV 5:16-215-KKC, 2018 WL 1168611, at *6 (E.D. Ky. Mar. 6, 2018) ("Courts have declined to apply the prison mailbox rule in circumstances where statutory or regulatory schemes define what constitutes 'filing.'"); Baker v. Drew, No. CIV A 2:07CV622-TFM, 2009 WL 2588905, at *4 (M.D. Ala. Aug. 19, 2009) (holding inmate did not properly exhaust administrative remedies, because, even if inmate placed appeal to BOP's Regional Director in prison's mailbox during appeal period, appeal was not received and logged into Administrative Remedy Index until two days after twenty-day period expired); Ageloff v. Reese, No. CIVA 507CV124-DCBMTP, 2009 WL 2591622, at *7 (S.D. Miss. Aug. 13, 2009) (rejecting prison mailbox rule in administrative remedy context) (citing Smith v. Conner, 250 F.3d 277, 278 (5th Cir. 2001)); Wall v. Holt, No. 1:CV-06-0194, 2007 WL 89000, at *4 (M.D. Pa. Jan. 9, 2007) ("The BOP specifically defines the filing date of an appeal as 'the date it is logged into the Administrative Remedy Index as received.'") (citing 28 C.F.R. § 542.18). The BOP's regulations provide that an administrative appeal is considered filed on the date it is logged into

---

[3] The prison mailbox rule considers court pleadings filed by a prisoner, including appeals and complaints, to be filed as of the date the pleading is delivered to "prison authorities for forwarding" to the court. Houston v. Lack, 487 U.S. 266, 270 (1988).

the Administrative Remedy Index as having been received. 28 C.F.R. § 542.18. This plain language thwarts Tucker's attempt to rely upon the prison mailbox rule to cure the untimeliness of his BP-10 filing. The BOP's internal regulations also contradict application of the prison mailbox rule. As the court in Wall explained,

> Additionally, Program Statement 1330.13, the BOP's Administrative Remedy Program notes that the time periods for filing appeals to the regional director and central office are 'deliberately long to allow sufficient mail time. Inmates should mail their Appeals promptly after receiving a response to ensure timely receipt.' See www.bop.gov, P.S. 1330.13, Administrative Remedy Program (effective date 8/6/2002), p. 8.

2007 WL 89000, at *1.[4]

Therefore, even accepting Tucker's version of events as true, he did not comply with the time limitations for filing his BP-10 appeal. "An inmate must use all steps in the administrative process and comply with any administrative deadlines and other critical procedural rules before exhaustion is proper. Thus, if an inmate has filed an untimely or otherwise procedurally defective administrative grievance or appeal, he has not properly exhausted his administrative remedies." Woodford, 548 U.S. at 89–92. Consequently, under the first Turner step, Tucker failed to properly exhaust his administrative remedies.

Tucker's claims of exhaustion wither even more readily when subjected to the crucible of examination required by the second Turner step. Again, to properly exhaust his administrative remedies, Tucker was required to file an appeal of the Regional Director's decision to the BOP's Office of General Counsel within thirty days of when the Regional Director signed the response.

---

[4] Any difficulty that an inmate may encounter in presenting an appeal so that it may be received by the Regional Office in twenty days is ameliorated by the fact that the BOP will consider a late appeal upon a showing of a valid reason for the delay. 28 C.F.R. § 542.15(a) ("When the inmate demonstrates a valid reason for delay, these time limits may be extended."); see also Wall, 2007 WL 89000 at *4 ("BOP did give [the inmate] an opportunity to submit staff verification that the delay in filing his regional appeal was not his fault but that he offered no justification, relying instead on the prison mailbox rule.") (citing Nigro, 40 F.3d at 996 (BOP regulations are fair to an inmate because they allow "relief when a prisoner cannot meet time limits")).

28 C.F.R. § 542.15. Tucker argues that the Regional Director's finding that his BP-10 filing was untimely "relieved" him of the requirement to file a BP-11 appeal to the Central Office. (Doc. 13, p. 1.) Tucker is mistaken. "To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" Bryant, 530 F.3d at 1378 (quoting Johnson, 418 F.3d at 1157). An inmate's ability to appeal to the Central Office does not contain an exception for grievances that the Regional Director finds to be untimely. Moreover, the BP-10 Form specifically advised Tucker that if he was "dissatisfied with [the Regional Director's] response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of his response." (Doc. 1, p. 15.)

Perhaps sensing the frailty of his argument that he had no obligation to file a BP-11 appeal, Tucker claims that he filed an appeal to the Central Office on January 20, 2017. (Doc. 1, p. 3.) However, this contention is not credible. Unlike his other administrative filings, Tucker does not provide a copy of his BP-11 filing. His unsupported argument that he could not afford to retain a copy of this filing does not ring true. Moreover, the Respondent has provided documentation including the BOP's records of Tucker's administrative filings and the affidavit of Ms. Santana to demonstrate that Tucker never filed a BP-11 appeal or pursued any other administrative remedy after the Regional Office denied his BP-10 appeal. This evidence is more credible than Tucker's unsupported conclusions to the contrary. Thus, under the second Turner step, I find that Turner failed to file an appeal to the Central Office as provided for in the BOP's administrative remedy process.

For all of these reasons, Tucker failed to properly exhaust his available administrative remedies prior to the filing of his Section 2241 Petition. Consequently, the Court should **DISMISS** Tucker's Petition.

## II. Whether Due Process Requirements Were Met

Even if Tucker's claims were not barred due to his failure to exhaust his administrative remedies, the Court should reject the merits of his conclusory claim that he was not afforded due process.

To determine whether Tucker's right to due process was violated, the Court must determine what process was owed to Tucker. A prisoner has a protected liberty interest in statutory good time credits, and therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are denied or taken away. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)). That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him; (2) is given the opportunity to call witnesses and present documentary evidence; and (3) receives a written statement setting forth the disciplinary board's findings of fact. Id. (citing Wolff, 418 U.S. at 563–67). Additionally, the Court of Appeals for the Eleventh Circuit has determined that an inmate has the right to attend his disciplinary hearing. Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992). Importantly, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants. Id.

As laid out above and in the attachments to the parties' pleadings, the record clearly reflects that Tucker received the required due process protections. Officer Lucas found Tucker in possession of stolen items on November 14, 2016, and Tucker received a copy of his incident

report on that same date. Tucker's incident report was investigated, and he received a DHO hearing on November 22, 2016. Tucker does not dispute that he received advance written notice of the charges and the hearing by virtue of his receipt of the Incident Report five days before the hearing. (Doc. 1, pp. 10–11.) Moreover, Tucker was advised, well in advance of the hearing, of his right to be present at the hearing, to testify, to call witnesses, and to present evidence. (Doc. 9-2.) Tucker attended the hearing, and his due process rights were again read and reviewed with him. He was assisted by a staff representative at the hearing, he made a statement and asked questions, and he was given the opportunity to present evidence and witnesses at the hearing. Following the hearing, DHO Aspinwall laid out his factual and legal conclusions in detail, and the DHO's written report was provided to Tucker. (Doc. 1, pp. 11–13.) Thus, the well-documented evidence unequivocally demonstrates that Tucker received advance written notice of the charges against him, attended the hearing, was given the opportunity to call witnesses and present documentary evidence, and received a written statement setting forth the DHO's findings of fact.

Tucker also argues that "there is no evidence supporting the agency's findings." (Doc. 13, p. 1.) "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, 845 (11th Cir. 2011). "Instead, the relevant question is whether there is any evidence in the record that could support

15

the conclusion reached by the disciplinary board." Hill, 472 U.S. at 456. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. App'x 752, 757 (11th Cir. 2006) (internal citation omitted).

The Court does not see anywhere in the record, before this Court or the DHO, where Tucker denies that he took food items from the staff dining area. Rather, Tucker attempts to dodge the overwhelming evidence of his wrongdoing by arguing that the evidence should not have been considered because the prison staff made technical or procedural errors when gathering the evidence. He focuses on the fact that prison staff did not provide him with a "confiscation form" for the bag in which the contraband was found. (Doc. 13, p. 1.) He argues that, because he did not receive a "confiscation form," he cannot be said to have been in possession of the bag or its contents. (Id.) Tucker's argument is nonsensical. Tucker raised this same argument at the Disciplinary Hearing, and the DHO provided a sensible basis for rejecting it. (Doc. 1, p. 12.) Moreover, even if prison staff did not comply with a technical prison policy regarding a "confiscation form," that error would not change the following facts: Officer Lucas saw Tucker pushing a laundry cart with a bag on top of the cart; Officer Lucas discovered that the bag contained food items that were only available in the staff dining area; Tucker worked in the staff dining area and he was not supposed to possess the food items; the items were hidden in the bag in the laundry cart; Tucker admitted to Lieutenant McKnight that he took the food items from the staff dining area;[5] Officer Millwood photographed the contraband food items, and the

---

[5] In his Motion to Dismiss, Respondent contended that the DHO relied upon Tucker's "written statement." (Doc. 9, p. 2.) Tucker takes issue with this contention and avers that he "never in fact, made a written statement." (Doc. 13, p. 1.) The Court agrees that it does not appear that Tucker made a written statement. However, what appears to be sloppy brief writing by Respondent's counsel does not change the fact that Tucker made an oral statement to the Lieutenant that he took the food items from the trash can in the staff dining area. (Doc. 11, p. 12.)

DHO reviewed those photos at the hearing. (Id. at pp. 12—13.) In light of these facts, all cited by the DHO, the "some evidence" standard has clearly been met. To the extent that Tucker attacks the credibility of the witness and the strength of the evidence against him, it is not this Court's place to second guess the DHO's credibility assessments or to reweigh the evidence.[6] Rather, this Court's interest is to ensure that there is some evidence to support the DHO's findings. The record in this case is more than sufficient to satisfy that showing.

Tucker received all of the due process protections afforded him during the disciplinary proceedings, and any contentions to the contrary are without merit. Thus, should the Court reach the merits of Tucker's Petition, it should **DENY** his claims.

## III    Leave to Appeal *in Forma Pauperis*

The Court should also deny Tucker leave to appeal *in forma pauperis*. Though Tucker has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a

---

[6] For example, Tucker argues that the Lieutenant's report states that Tucker also took pork chops, but FCI Jesup did not have pork chops during the incident. It is not this Court's place to delve into such factual discrepancies when there is some evidence to support the DHO's findings. Moreover, regardless of whether Tucker could have taken any pork chops, both Lieutenant McKnight and Officer Lucas stated that Tucker was found in possession of chicken, eggs, and cookies. (Doc. 1, p. 12.) Further, while Tucker argues that the photographs of bags introduced at the hearing were opaque, the DHO states that "one photograph depicts a clear plastic bag with numerous fried pork chops, a clear plastic bag with 32 baked chocolate chip cookies, and a clear plastic bag with numerous pieces of fried chicken. The other photograph depicts your gray tote bag with six eggs lying on top of khaki government issued clothing." (Id.) Thus, regardless of Tucker's technical disputes with the evidence offered against him, it is clear that the DHO had more than sufficient evidence to find that Tucker committed the act of stealing.

frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Tucker's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Tucker *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** Tucker's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Tucker leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Tucker and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 24th day of July, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA